# Exhibit 3

EXHIBIT 3, PAGE 13

## ORDINANCE NO. 186606

An ordinance amending Article 14.6 of Chapter IV of the Los Angeles Municipal Code regarding tenant protections during the COVID-19 pandemic

### THE PEOPLE OF THE CITY OF LOS ANGELES
### DO ORDAIN AS FOLLOWS:

Section 1. Article 14.6 of Chapter IV of the Los Angeles Municipal Code is amended in its entirety to read as follows:

### ARTICLE 14.6

### TEMPORARY PROTECTION OF TENANTS DURING COVID-19 PANDEMIC

### SEC. 49.99. FINDINGS.

The City of Los Angeles is experiencing an unprecedented public health crisis brought by the Coronavirus, which causes an acute respiratory illness called COVID-19.

On March 4, 2020, the Governor of the State of California declared a State of Emergency in California as result of the COVID-19 pandemic. That same day, the Mayor also declared a local emergency.

On March 16, 2020, the Governor issued Executive Order N-28-20, which authorizes local jurisdictions to suspend certain evictions of renters and homeowners, among other protections. The Executive Order further authorizes the City of Los Angeles to implement additional measures to promote housing security and stability to protect public health and mitigate the economic impacts of the COVID-19 pandemic.

The economic impacts of COVID-19 have been significant and will have lasting repercussions for the residents of the City of Los Angeles. National, county, and city public health authorities issued recommendations, including, but not limited to, social distancing, staying home if sick, canceling or postponing large group events, working from home, and other precautions to protect public health and prevent transmission of this communicable virus. Residents most vulnerable to COVID-19, including those 65 years of age or older, and those with underlying health issues, have been ordered to self-quarantine, self-isolate, or otherwise remain in their homes. Non-essential businesses have been ordered to close. More recent orders from the Governor and the Mayor have ordered people to stay at home and only leave their homes to visit or work in essential businesses. As a result, many residents are experiencing unexpected expenditures or substantial loss of income as a result of business closures, reduced work hours, or lay-offs related to these government-ordered interventions. Those already experiencing homelessness are especially vulnerable during this public health crisis.

The COVID-19 pandemic threatens to undermine housing security and generate unnecessary displacement of City residents and instability of City businesses. Therefore, the City of Los Angeles has taken and must continue to take measures to protect public health, life, and property.

This ordinance temporarily prohibits evictions of residential and commercial tenants for failure to pay rent due to COVID-19, and prohibits evictions of residential tenants during the emergency for no-fault reasons, for unauthorized occupants or pets, and for nuisance related to COVID-19. This ordinance further suspends withdrawals of occupied residential units from the rental market under the Ellis Act, Government Code Section 7060, et seq.

**SEC. 49.99.1. DEFINITIONS.**

The following words and phrases, whenever used in this article, shall be construed as defined in this section:

    A.    **Commercial Real Property.** "Commercial real property" is any parcel of real property that is developed and used either in part or in whole for commercial purposes. This does not include commercial real property leased by a multi-national company, a publicly traded company, or a company that employs more than 500 employees.

    B.    **Endeavor to Evict.** "Endeavor to evict" is conduct where the Owner lacks a good faith basis to believe that the tenant does not enjoy the benefits of this article and the Owner serves or provides in any way to the tenant: a notice to pay or quit, a notice to perform covenant or quit, a notice of termination, or any other eviction notice.

    C.    **Local Emergency Period.** "Local emergency period" is the period of time from March 4, 2020, to the end of the local emergency as declared by the Mayor.

    D.    **No-fault Reason.** "No-fault reason" is any no-fault reason under California Civil Code Section 1946.2(b) or any no-fault reason under the Rent Stabilization Ordinance.

    E.    **Owner.** "Owner" is any person, acting as principal or through an agent, offering residential or Commercial Real Property for rent, and includes a successor in interest to the owner.

    F.    **Residential Real Property.** "Residential real property" is any dwelling or unit that is intended or used for human habitation.

## SEC. 49.99.2. PROHIBITION ON RESIDENTIAL EVICTIONS.

  A. During the Local Emergency Period and for 12 months after its expiration, no Owner shall endeavor to evict or evict a residential tenant for non-payment of rent during the Local Emergency Period if the tenant is unable to pay rent due to circumstances related to the COVID-19 pandemic. These circumstances include loss of income due to a COVID-19 related workplace closure, child care expenditures due to school closures, health-care expenses related to being ill with COVID-19 or caring for a member of the tenant's household or family who is ill with COVID-19, or reasonable expenditures that stem from government-ordered emergency measures. Tenants shall have up to 12 months following the expiration of the Local Emergency Period to repay any rent deferred during the Local Emergency Period. Nothing in this article eliminates any obligation to pay lawfully charged rent. However, the tenant and Owner may, prior to the expiration of the Local Emergency Period or within 90 days of the first missed rent payment, whichever comes first, mutually agree to a plan for repayment of unpaid rent selected from options promulgated by the Housing and Community Investment Department ("HCID") for that purpose.

  B. No Owner shall endeavor to evict or evict a residential tenant for a no-fault reason during the Local Emergency Period.

  C. No Owner shall endeavor to evict or evict a residential tenant based on the presence of unauthorized occupants or pets, or for nuisance related to COVID-19 during the Local Emergency Period.

  D. No Owner shall charge interest or a late fee on rent not paid under the provisions of this article.

  E. An Owner shall: (i) provide written notice to each residential tenant of the protections afforded by this article ("Protections Notice") within 15 days of the effective date of this ordinance; and (ii) provide the Protections Notice during the Local Emergency Period and for 12 months after its termination each time the Owner serves a notice to pay or quit, a notice to terminate a residential tenancy, a notice to perform covenant or quit, or any eviction notice, including any notice required under California Code of Civil Procedure Section 1161 and California Civil Code Section 1946.1. HCID shall make available the form of the Protections Notice, which must be used, without modification of content or format, by the Owner to comply with this subparagraph. HCID will produce the form of the Protections Notice in the most commonly used languages in the City, and an Owner must provide the Protections Notice in English and the language predominantly used by each tenant.

  F. No Owner shall influence or attempt to influence, through fraud, intimidation or coercion, a residential tenant to transfer or pay to the Owner any sum received by the tenant as part of any governmental relief program.

3

    G.    Except as otherwise specified in this article, nothing in this section shall prohibit an Owner from seeking to evict a residential tenant for a lawful purpose and through lawful means.

### SEC. 49.99.3. PROHIBITION ON COMMERICAL EVICTIONS.

During the Local Emergency Period and for three months thereafter, no Owner shall endeavor to evict or evict a tenant of Commercial Real Property for non-payment of rent during the Local Emergency Period if the tenant is unable to pay rent due to circumstances related to the COVID-19 pandemic. These circumstances include loss of business income due to a COVID-19 related workplace closure, child care expenditures due to school closures, health care expenses related to being ill with COVID-19 or caring for a member of the tenant's household or family who is ill with COVID-19, or reasonable expenditures that stem from government-ordered emergency measures. Tenants shall have up to three months following the expiration of the Local Emergency Period to repay any rent deferred during the Local Emergency Period. Nothing in this article eliminates any obligation to pay lawfully charged rent. No Owner shall charge interest or a late fee on rent not paid under the provisions of this article.

### SEC. 49.99.4. PROHIBITION ON REMOVAL OF OCCUPIED RESIDENTIAL UNITS.

No Owner may remove occupied Residential Real Property from the rental market under the Ellis Act, Government Code Section 7060, *et seq.*, during the pendency of the Local Emergency Period. Tenancies may not be terminated under the Ellis Act until 60 days after the expiration of the Local Emergency Period.

### SEC. 49.99.5. RETROACTIVITY.

This article applies to nonpayment eviction notices, no-fault eviction notices, and unlawful detainer actions based on such notices, served or filed on or after the date on which a local emergency was proclaimed. Nothing in this article eliminates any obligation to pay lawfully charged rent.

### SEC. 49.99.6. AFFIRMATIVE DEFENSE.

Tenants may use the protections afforded in this article as an affirmative defense in an unlawful detainer action.

### SEC. 49.99.7. PRIVATE RIGHT OF ACTION FOR RESIDENTIAL TENANTS.

If an Owner violates Section 49.99.2, except for 49.99.2(E)(i), an aggrieved residential tenant may institute a civil proceeding for injunctive relief, direct money damages, and any other relief the Court deems appropriate, including, at the discretion of the Court, an award of a civil penalty up to $10,000 per violation depending on the severity of the violation. If the aggrieved residential tenant is older than 65 or disabled, the Court may award an additional civil penalty up to $5,000 per violation depending on

4

the severity of the violation. The Court may award reasonable attorney's fees and costs to a residential tenant who prevails in any such action. The Court may award reasonable attorney's fees and costs to an Owner who prevails in any such action and obtains a Court determination that the tenant's action was frivolous. A civil proceeding by a residential tenant under this section shall commence only after the tenant provides written notice to the Owner of the alleged violation, and the Owner is provided 15 days from the receipt of the notice to cure the alleged violation. The remedies in this paragraph apply on the effective date of this section, and are not exclusive nor preclude any person from seeking any other remedies, penalties or procedures provided by law.

### SEC. 49.99.8. PENALTIES.

Upon the effective date of this section, an Owner who violates this article shall be subject to the issuance of an administrative citation as set forth in Article 1.2 of Chapter I of this Code. Issuance of an administrative citation shall not be deemed a waiver of any other enforcement remedies provided in this Code.

### SEC. 49.99.9. SEVERABILITY.

If any provision of this article is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions of this article which can be implemented without the invalid provisions, and to this end, the provisions of this article are declared to be severable. The City Council hereby declares that it would have adopted this article and each provision thereof irrespective of whether any one or more provisions are found invalid, unconstitutional or otherwise unenforceable.

Sec. 2. **URGENCY CLAUSE.** The City Council finds and declares that this ordinance is required for the immediate protection of the public peace, health, and safety for the following reasons: the City of Los Angeles and its residents are suffering significant risk to life and property due to the devastating effects of COVID-19, and the protections afforded in this ordinance are vital to mitigate those risks. The Council, therefore, adopts this ordinance to become effective upon publication pursuant to Los Angeles City Charter Section 253.

Sec. 3. The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

Approved as to Form and Legality

MICHAEL N. FEUER, City Attorney

By _____
DAVID MICHAELSON
Chief Assistant City Attorney

Date  5/6/2020

File No(s). 20-0147-S19, 20-0479, 20-0522

M:\Muni Counsel\ORDINANCES\Final Revised Draft Ordinance Amending LAMC Article 14.6 Re Tenant Protections 5.6.20.docx

The Clerk of the City of Los Angeles hereby certifies that the foregoing ordinance was passed by the Council of the City of Los Angeles, **by a vote of not less than three-fourths** of all its members.

CITY CLERK                                  MAYOR

_____              _____

Ordinance Passed 05/06/2020                Approved 05/07/2020

Published Date: 05/12/2020
Ordinance Effective Date: 05/12/2020
Council File No.: 20-0147-S19, 20-0479, 20-0522

EXHIBIT 3, PAGE 19