ADRIENNA WONG (SBN 282026)
awong@aclusocal.org
TIFFANY BAILEY (SBN 319886)
tbailey@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 94111
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

*Attorneys for Amici Curiae*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APARTMENT ASSOCIATION OF LOS ANGELES COUNTY, INC., dba "APARTMENT ASSOCIATION OF GREATER LOS ANGELES,"<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of Los Angeles; and CITY COUNCIL OF THE CITY OF LOS ANGELES, in its official capacity; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:20-cv-05193-DDP-JEM<br><br>BRIEF OF AMICI CURIAE SCHOLARS IN SUPPORT OF INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>Judge: Hon. Dean D. Pregerson |

# CORPORATE DISCLOSURE STATEMENT

Amici curiae UCLA Luskin Institute on Inequality and Democracy and UCLA Center for Neighborhood Knowledge are wholly owned by the University of California, Los Angeles. The remaining amici curiae are individual scholars. No publicly held corporation owns 10% or more of any stake or stock in amici curiae.

# TABLE OF CONTENTS

STATEMENT OF INTEREST ................................................................................1

INTRODUCTION ...................................................................................................3

ARGUMENT ...........................................................................................................3

    I.    Enjoining COVID-19-Related Tenant Protections Threatens Eviction and Displacement of Hundreds of Thousands of Families .................................................................3

    II.    The Proposed Preliminary Injunction Would Dramatically Amplify Racial and Ethnic Inequality in Los Angeles .........................6

CONCLUSION ......................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

Ananya Roy et al., *Hotel California: Housing the Crisis*, UCLA Luskin Inst. On Ineq. & Democracy (July 2020) ................................. 11

Ananya Roy et al., *Who Profits From Crisis? Housing Grabs In Times of Recovery,* UCLA Luskin Inst. on Inequality & Democracy ..................... 10, 11

Angela Hanks et al., *Systematic Inequality: How America's Structural Racism Helped Create the Black-White Wealth Gap*, Ctr. for Am. Progress (Feb. 21, 2018) .................................................................. 9

Daniel Flaming et al., *Homelessness In L.A.*, Econ. Roundtable (Apr. 2018) ................................................................................ 4

David Wagner, *Unemployment Is Hitting LA's Black Neighborhoods Hard*, LAist (June 16, 2020) .................................................. 9

Gary Blasi*, UD Day: Impending Evictions and Homelessness in Los Angeles*, UCLA Luskin Inst. On Ineq. & Democracy (May 28, 2020) ..................................................................................... 5, 6

*Household Pulse Survey Data Tables*, U.S. Census Bureau, (Oct. 1, 2020) .................................................................................. 5

Insight Center, *Rules of Our Economy Are Harming People of Color, Women & Immigrants During Covid-19* (May 2020) ........................ 8

Laura Martínez et al.*, COVID-19 in Vulnerable Communities: An Examination by Race & Ethnicity in Los Angeles and New York City*, UCLA Latino Pol'y & Pol. Initiative (July 2020) ....................... 8

Maria Cabildo et al., *Report: How Race, Class, And Place Fuel A Pandemic*, Race Counts ................................................................ 8

Margot Roosevelt & Taylor Avery, *There's a Black Jobs Crisis. Coronavirus Is Making It Worse*, L.A. Times (June 5, 2020) ............... 8

Mark Hugo Lopez et al., *Financial and Health Impacts of COVID-19 Vary Widely by Race and Ethnicity* (May 5, 2020) ........................ 8, 9

Michael Manville et al*., COVID-19 and Renter Distress: Evidence from Los Angeles*, UCLA Lewis Ctr. for Reg'l Pol'y Stud. (Aug. 2020) ................................................................................................................. 4

Paul Ong, *Neighborhood Inequality in Shelter-in-Place Burden: Impacts of COVID-19 in Los Angeles*, UCLA Ctr. for Neighborhood Knowledge (Apr. 2020). ............................................................. 8, 9

Paul Ong*, Systemic Racial Inequality and the COVID-19 Renter Crisis*, UCLA Ctr. for Neighborhood Knowledge (Aug. 7, 2020) ................... 6, 7

Paul Ong et al., *Economic Impacts of the COVID-19 Crisis in Los Angeles: Identifying Renter-Vulnerable Neighborhoods,* UCLA Ctr. for Neighborhood Knowledge (Apr. 2020) ............................................ 4, 7, 8

Paul Ong et al., *Jobless During a Global Pandemic: The Disparate Impact of COVID-19 on Workers of Color in the World's Fifth Largest Economy*, UCLA Ctr. for Neighborhood Knowledge (June 2020). ................................................................................................................. 9

*The Destruction of Los Angeles Affordable Housing Due to the Ellis Act!,* The Anti-Eviction Mapping Project ............................................. 11

UCLA Data for Democracy Team, *Housing Inequality in Los Angeles*, UCLA Luskin Inst. On Ineq. & Democracy (Apr. 2020) ..................... 4, 7

BRIEF OF AMICI CURIAE SCHOLARS IN SUPPORT OF INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

iv

# STATEMENT OF INTEREST

Amici curiae are urban planning and racial and social inequality scholars at the University of California, Los Angeles ("UCLA"). As scholars that have researched the disparate impact of COVID-19 on Black and Latine[1] renters in Los Angeles extensively, amici's expertise and knowledge of relevant empirical data and statistics will inform the court's perspective on the balance of equities and public interest considerations related to Plaintiff's motion for a preliminary injunction. Because of their research and scholarship and the certain harm to marginalized groups, Amici are acutely interested in this litigation and consider the denial of the preliminary injunction essential to preventing the mass displacement and eviction of Black and Latine renters during a global pandemic.

**Ananya Roy** is the Professor of Urban Planning, Social Welfare, and Geography and the Meyer and Renee Luskin Chair in Inequality and Democracy at UCLA. Professor Roy's research and scholarship has centered on poverty and inequality, including work that analyzes the displacement of working-class communities of color from urban cores to the far peripheries of metropolitan regions. Professor Roy is the principal investigator on a National Science Foundation Research Coordination Network, *Housing Justice in Unequal Cities*, which brings together research communities to study interconnected processes related to the precarious nature of housing, such as evictions, homelessness and displacement, in tandem with forms of segregation and discrimination.

Professor Roy is also the inaugural Director of the **UCLA Luskin Institute on Inequality and Democracy**, which produces research on the displacement and dispossession of vulnerable communities in Los Angeles. The Institute's publications include *Data for Democracy: Housing Inequality in Los Angeles*, and *UD Day: Impending Evictions and Homelessness in Los Angeles*, which analyzes

---

[1] This brief uses the gender-neutral term "Latine" interchangeably with the terms "Latino" and "Hispanic."

unemployment claim filings and Census data to project a surge in evictions and homelessness following the lifting of COVID-19 emergency orders. The Institute on Inequality and Democracy also provided support for *COVID-19 and Renter Distress: Evidence from Los Angeles*, a UCLA Lewis Center for Regional Policy Studies and USC Lusk Center for Real Estate report that analyzes the disparate impact of COVID-19 on Black and Latine renter households.

**Paul Ong** is a research professor at UCLA Luskin School of Public Affairs, Institute of the Environment and Sustainability, and Department of Asian American Studies. He is the Director of the **UCLA Center for Neighborhood Knowledge**, which studies the impact of systemic inequality on low-income neighborhoods, immigrant enclaves, and minority communities. Professor Ong has authored several research studies on COVID-19's impact on Los Angeles neighborhoods, including *Systemic Racial Inequality and the COVID-19 Renter Crisis*, which uses federal housing data to analyze the social and economic effects of COVID-19 and found that Black and Latine tenants are at least twice as likely as white tenants to experience rent-related hardships resulting from COVID-19.

This brief is filed with the consent of Defendants and Intervenors. Plaintiff did not provide an answer to Amici's request for consent. Counsel for Amici certify that no party's counsel authored this brief in whole or in part, and no person other than Amici, their members, or their counsel made a monetary contribution to its preparation or submission.

# INTRODUCTION

The proposed preliminary injunction threatens mass displacement in Los Angeles. In times of economic prosperity and low unemployment, Los Angeles tenants already endured back-breaking rent burdens. Now, with an unemployment crisis worse than the Great Depression and a tattered safety net of federal social protections, tenants have no means to pay rent. Without local policies in place to protect tenants from the COVID-19 crisis, hundreds of thousands of Los Angeles households are at risk of eviction, and many of those evicted will remain unhoused.

Amici's studies of COVID-19 impacts in Los Angeles show that most of this suffering will be concentrated in the city's working-class communities of color, which are already bearing the burden of high infection and death rates. Enjoining the challenged tenant protections will have a disproportionate negative impact on Black and Latine families with children—the same Los Angeles families already hit hardest by COVID-19 job losses and who have the least resources to recover from the devastation of eviction. The public has an urgent and compelling interest in averting this racial and economic injustice and in preventing the amplification of housing segregation and racialized displacement in Los Angeles. For all of these reasons, a preliminary injunction would not be in the public interest or equitable in light of the balance of hardships.

# ARGUMENT

## I. Enjoining COVID-19-Related Tenant Protections Threatens Eviction and Displacement of Hundreds of Thousands of Families

The proposed preliminary injunction would remove a vital safety net preventing mass eviction and displacement of hundreds of thousands of families during a global pandemic.

Most Los Angeles households are renters and the majority experienced housing precarity even before the pandemic. In Los Angeles County, 55% of

households are renters, and most of these households are rent-burdened, meaning they spend over 30% of income on rent.[2] A third of them are *severely* rent-burdened, meaning they spend over 50% of income on rent.[3] Half of all renter households in Los Angeles County have an annual income below $35,000.[4] And two thirds of them subsist one paycheck away from becoming unable to cover their monthly housing costs.[5] There are 600,000 people living in Los Angeles County households paying 90% or more of their income on rent.[6]

COVID-19 has greatly exacerbated this existing housing precarity. The most rent-burdened Los Angeles residents are the most at risk of losing their jobs due to COVID-19.[7] One in seven renter households in the county is currently behind on rent, due in large part to the pandemic's impact on employment.[8] *See* Figure 1.[9] Research from Los Angeles shows that "renters who can afford to pay rent will, and the vast majority of renter households who miss rent have members who lost work, became sick with COVID, or both."[10]

---

[2] UCLA Data for Democracy Team, *Housing Inequality in Los Angeles*, UCLA Luskin Inst. on Ineq. & Democracy [hereinafter, "UCLA IID"], 3 (Apr. 2020).
[3] *Id.* at 6.
[4] Paul Ong et al., *Economic Impacts of the COVID-19 Crisis in Los Angeles: Identifying Renter-Vulnerable Neighborhoods*, UCLA Ctr. for Neighborhood Knowledge [hereinafter "UCLA CNK"], 4 (Apr. 2020) [hereinafter, "Economic Impacts"].
[5] *Id.* at 1.
[6] Daniel Flaming et al., *Escape Routes: Meta-Analysis of Homelessness In L.A.*, Econ. Roundtable, 3 (Apr. 2018).
[7] Ong, *Economic Impacts* at 3.
[8] Based on data for Los Angeles Cnty. and Orange Cnty. provided by Paul Ong, UCLA CNK. *See infra,* n.12.
[9] *Id.*
[10] Michael Manville et al., *COVID-19 and Renter Distress: Evidence from Los Angeles*, UCLA Lewis Ctr. for Reg'l Pol'y Stud., 7 (Aug. 2020).



*Figure 1*

The neighborhoods in Los Angeles County most vulnerable to eviction related to COVID-19 economic impacts are concentrated in the City of Los Angeles ("City"). Based on data collected by the U.S. Census Bureau through its weekly Household Pulse Survey, Amici estimate that 129,000 households in the City, representing 457,000 individuals, are currently unable to pay their rent.[11] Amici estimate, based on Census data, that a third of evicted families will not be able to find or afford replacement housing and will become homeless.[12]

The burden of these evictions will fall hard on children. Amici's research indicates that households most vulnerable to eviction tend to be families with children, *see* Figure 2, and that 130,000 children will be among the City residents evicted if COVID-19-related tenant protections are not maintained.[13] Many of these

---

[11] Based on data for Los Angeles Cnty. and Orange Cnty. provided by Paul Ong, UCLA CNK. The Household Pulse Survey collects data on the social and economic effects of COVID-19 on Americans. *Household Pulse Survey Data Tables,* U.S. Census Bureau (Oct. 1, 2020), https://www.census.gov/programs-surveys/household-pulse-survey/data.html. Amici's analysis is based on responses to the first phase of the survey (April 23- July 21, 2020), as well as data from the American Community Survey and unemployment-insurance claims from California's Employment Development Department.

[12] Gary Blasi, *UD Day: Impending Evictions and Homelessness in Los Angeles*, UCLA IID, 6 (May 28, 2020).

[13] *See supra,* n.12.

BRIEF OF AMICI CURIAE SCHOLARS IN SUPPORT OF INTERVENORS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

5

children are likely to become homeless along with their families.[14]



*Figure 2*

Research thus shows that mass evictions of hundreds of thousands of families in the City are imminent unless the requested injunction is denied and the tenant protection ordinances upheld.

### II. The Proposed Preliminary Injunction Would Dramatically Amplify Racial and Ethnic Inequality in Los Angeles

The proposed preliminary injunction would amplify systemic inequality that disadvantages Black and Latine communities in Los Angeles and is therefore at odds with the public interest. Research indicates that the burdens of mass eviction and displacement will overwhelmingly fall on Black and Latine communities.

Black and Latine residents of Los Angeles are more likely to be evicted if the challenged ordinances are enjoined.[15] Census Bureau data reflects enormous racial disparities in who is behind on rent payments during this pandemic.[16] *See* Figure 3.[17] For example, Latine households in California are two and a half times

---

[14] Blasi at 6.
[15] *See* Paul Ong, *Systemic Racial Inequality and the COVID-19 Renter Crisis*, UCLA CNK, 3 (Aug. 7, 2020) [hereinafter "Systemic Racial Inequality"].
[16] *Id.* at 4.
[17] *See supra,* n.12.

as likely to be behind on rent as non-Latine whites.[18] Amici's analysis of neighborhood vulnerability to the COVID-19 crisis finds that the most vulnerable renters in Los Angeles County are concentrated in Black, Latine, and immigrant neighborhoods in the City.[19] Twice as many Black residents reside in high-vulnerability neighborhoods as white residents.[20]



*Figure 3*

These disparities are the result of both pre-pandemic inequality and the fact that COVID-19 and its economic effects have disproportionately harmed Black and Latine people. Due to longstanding systemic racism, including practices like redlining and subprime lending, Black and Latine residents of Los Angeles are more likely to be renters; less than half own their own homes.[21] Sixty percent of Black and Latine families are renters.[22]

Black and Latine people are also more impacted by the COVID-19 virus. Contracting COVID-19 can lead to income and job loss, significant medical expenses, and in the worst cases, the death of a family breadwinner – all of which result in difficulty paying rent. Although the virus first affected wealthier and whiter neighborhoods in Los Angeles, its spread accelerated in low-income Black

---

[18] Ong, *Systemic Racial Inequality* at 8, fig.4.
[19] Ong, *Economic Impacts* at 14, tbl. 3.
[20] *Id*. at 14.
[21] UCLA Data for Democracy Team at 4.
[22] *Id*.

and Latine neighborhoods, such that Black and Latine residents of Los Angeles are now more likely to get sick from COVID-19.[23] Latine and Black residents of Los Angeles County are twice as likely as white residents to die from COVID-19.[24] Amici's study of Los Angeles neighborhoods shows that it is more difficult to shelter in place in communities that are home to more Black and Latine residents.[25]

Black, Latine, immigrant and low-wage workers are also the most impacted by COVID-19-related job loss. These workers are concentrated in job sectors heavily impacted by COVID-19.[26] Between March and May of this year, more than a quarter of California's Black workers filed unemployment insurance claims.[27] National survey data indicates that "61% of Hispanic Americans and 44% of [B]lack Americans . . . had experienced a job or wage loss [in their household] due to the coronavirus outbreak, compared with 38% of white adults."[28] Unemployment rates in California have increased across the board as a result of COVID-19, but are highest for Black and Latine Californians.[29] In Los Angeles,

---

[23] Maria Cabildo et al., *Report: How Race, Class, And Place Fuel A Pandemic*, Race Counts (last visited Oct. 6, 2020), https://www.racecounts.org/covid/.

[24] Laura Martínez et al., *COVID-19 in Vulnerable Communities: An Examination by Race & Ethnicity in Los Angeles and New York City*, UCLA Latino Pol'y & Pol. Initiative, 4 (July 2020).

[25] Paul Ong et al., *Neighborhood Inequality in Shelter-in-Place Burden: Impacts of COVID-19 in Los Angeles*, UCLA CNK, 6–7(Apr. 2020).

[26] *See* Ong, *Economic Impacts* at 14, tbl.3; see also Insight Center, *Rules of Our Economy Are Harming People of Color, Women & Immigrants During Covid-19*, 1–2 (May 2020).

[27] Margot Roosevelt & Taylor Avery, *There's a Black Jobs Crisis. Coronavirus Is Making It Worse*, L.A. Times (June 5, 2020).

[28] Mark Hugo Lopez et al., *Financial and Health Impacts of COVID-19 Vary Widely by Race and Ethnicity*, Pew Rsch. Ctr. (May 5, 2020).

[29] Paul Ong et al., *Jobless During a Global Pandemic: The Disparate Impact of COVID-19 on Workers of Color in the World's Fifth Largest Economy,* UCLA CNK, 4 (June 2020) [hereinafter Ong, *Disparate Impact*].

unemployment numbers are highest in Black neighborhoods, across income levels.[30]

The communities most vulnerable to job loss also have less access to resources that could help them weather a period of unemployment. Amici's research found that Black and Latine workers are less likely to be covered by unemployment insurance during this pandemic.[31] And longstanding practices of racial exclusion and wealth extraction from communities of color have deprived them of household savings they could draw on during a crisis.[32] According to national survey data, "nearly three-quarters of [B]lack (73%) and Hispanic adults (70%) said they did not have emergency funds to cover three months of expenses; around half of white adults (47%) said the same."[33]

As Amici's scholarship describes, these and other vectors of inequality intersect and compound with each other to make communities of color particularly susceptible to eviction in the absence of adequate renter protections during this pandemic. Professor Ong has used the term "triple jeopardy" to conceptualize how the same Los Angeles neighborhoods simultaneously (1) are under the most economic stress from COVID-related job losses, (2) have fewer resources to weather the COVID-19 crisis, and (3) are less able to qualify for financial relief.[34] Building on this work, Professor Roy draws on multiple indices to measure "racialized risk"—the exposure to unemployment, unsafe jobs, eviction, homelessness and wealth loss that working-class communities of color experience

---

[30] David Wagner, *Unemployment Is Hitting LA's Black Neighborhoods Hard*, LAist (June 16, 2020).
[31] Ong, *Disparate Impact* at 13.
[32] *See, e.g.,* Angela Hanks et al., *Systematic Inequality: How America's Structural Racism Helped Create the Black-White Wealth Gap*, Ctr. for Am. Progress (Feb. 21, 2018).
[33] Hugo Lopez.
[34] Ong, *Neighborhood Inequality* at 8.

disproportionately and often all at once—in order to identify Los Angeles County zip codes most vulnerable to housing displacement during crisis; the most vulnerable zip codes in the County belong to communities of color in the City.[35]

The mass evictions that the City's tenant protection ordinances currently hold back also threaten to amplify segregation in and accelerate displacement from Los Angeles in profound and visible ways. As the data described herein shows, households most at risk of eviction related to COVID-19 impacts are concentrated in communities of color in the City of Los Angeles, and many of those evicted are unlikely to find replacement housing in those neighborhoods. This disparate impact must be considered within the context of Los Angeles's history of racial marginalization and exclusion, including processes of development and redevelopment that have pushed Black households out of the City to the far peripheries of the region over the past decade. *See* Figure 4.[36] COVID-19's economic impact, left unchecked, will exacerbate and accelerate this push-out.

Research shows that evictions in Los Angeles lead to conversion of housing units that reduce rent-controlled housing stock.[37] Amici's research has also found that economic crises like the present one facilitate "housing grabs": mass acquisition of residential property by powerful corporate landlords.[38] In the wake of the Great Recession, residential unit acquisitions by limited liability companies (LLCs) increased significantly in low-income communities of color.[39] As Amici

---

[35] Ananya Roy et al., *Who Profits From Crisis? Housing Grabs In Times of Recovery*, UCLA IID, 1 (forthcoming).
[36] Ananya Roy et al., *Hotel California: Housing the Crisis*, UCLA IID, 12 (July 2020) (map prepared by Pamela Stephens).
[37] *The Destruction of Los Angeles Affordable Housing Due to the Ellis Act!,* The Anti-Eviction Mapping Project (last visited Oct. 7, 2020), http://antievictionmappingproject.net/losangeles.html.
[38] *Roy, Who Profits From Crisis?* at 1-2.
[39] *Id.* at 5.

have documented, landlord corporations use evictions in these vulnerable communities to consolidate wealth and develop luxury housing.[40] In sum, the proposed injunction threatens to not only push Black and brown families out of their homes, but also out of their communities, while making the City permanently less accessible to them.



*Figure 4*

Although the proposed preliminary injunction threatens all poor and rent-burdened Los Angeles households with serious harm, data and historical study show that Black and Latine households will bear the brunt of the consequences. Because an injunction would be contrary to the significant public interest in addressing racial and economic inequality and would further harm marginalized communities, the motion should be denied.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

---

[40] *See id.* at 19

Respectfully submitted,

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTHERN CALIFORNIA

Dated: October 9, 2020

By: /s/ *Adrienna Wong*
Adrienna Wong

Attorneys for AMICI CURIAE Ananya Roy, Paul Ong, UCLA Luskin Institute on Inequality and Democracy, and UCLA Center for Neighborhood Knowledge