KATHRYN A. EIDMANN (268053)
keidmann@publiccounsel.org
FAIZAH MALIK (320479)
fmalik@publiccounsel.org
GIGI LAM (284233)
glam@publiccounsel.org
ALISA RANDELL (293490)
arandell@publiccounsel.org
LAUREN ZACK (321497)
lzack@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Avenue
Los Angeles, California 90005
Telephone:   (213) 385-2977
Facsimile:    (213) 385-9089

NISHA N. VYAS (228922)
nvyas@wclp.org
MATTHEW WARREN (305422)
mwarren@wclp.org
RICHARD ROTHSCHILD (67356)
rrothschild@wclp.org
WESTERN CENTER ON LAW AND
POVERTY
3701 Wilshire Blvd. #208
Los Angeles, California 90010
Telephone:  (213) 487-7211
Facsimile:   (213) 487-0242

MICHAEL RAWSON (95868)
mrawson@pilpca.org
CRAIG CASTELLANET (176054)
ccastellanet@pilpca.org
PUBLIC INTEREST LAW PROJECT
449 15th Street #301
Oakland, California 94612
Telephone:  (510) 891-9794
Facsimile:   (510) 891-9727

MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
KRYSTA KAUBLE PACHMAN
(280951)
kpachman@susmangodfrey.com
ROHIT D. NATH (316062)
rnath@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150

Attorneys for Intervenor-Defendants, ALLIANCE OF CALIFORNIANS FOR COMMUNITY EMPOWERMENT ACTION and STRATEGIC ACTIONS FOR A JUST ECONOMY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| APARTMENT ASSOCIATION OF LOS ANGELES COUNTY, INC., dba "APARTMENT ASSOCIATION OF GREATER LOS ANGELES," <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES; ERIC GARCETTI, in his official capacity as Mayor of Los Angeles; and CITY COUNCIL OF THE CITY OF LOS ANGELES, in its official capacity; DOES 1 through 25, inclusive, Defendants. | Case No. 2:20-cv-05193-DDP-JEM <br><br> **RESPONSE TO PLAINTIFF'S OBJECTIONS TO INTERVENOR-DEFENDANTS' OPPOSITION EVIDENCE** <br><br> **Date: October 26, 2020** <br> **Courtroom: 9C, 9th Floor** <br> **Judge: Hon. Dean D. Pregerson** |

1    Plaintiff's Objections to Intervenor-Defendants' Opposition Evidence, raising

2    numerous formalistic objections to Intervenor-Defendants' declaration evidence

3    pursuant to various Federal Rules of Evidence, is misguided in its entirety and can

4    be summarily denied by this Court. Evidentiary rules do not apply to disqualify

5    evidence at the preliminary injunction stage.

6    Plaintiff argues that several declarations submitted by Intervenor-Defendants

7    in support of their response to Plaintiff's Motion for Preliminary Injunction "violate

8    the Federal Rules of Evidence and should therefore be disregarded." Plaintiff's

9    Objections at 2. In asking this Court to "disregard" evidence, Plaintiff misstates the

10   application of the Federal Rules of Evidence at the preliminary injunction stage.

11   Contrary to Plaintiff's position, "[i]t is well established that trial courts can consider

12   otherwise inadmissible evidence in deciding whether to issue a preliminary

13   injunction." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177,

14   1184 (C.D. Cal. 2015), *aff'd*, 834 F.3d 958 (9th Cir. 2016). "[T]he Federal Rules of

15   Evidence do not strictly apply to preliminary injunction proceedings." *Disney*

16   *Enterprises, Inc. v. VidAngel, Inc.*, 224 F. Supp. 3d 957, 966 (C.D. Cal.

17   2016), *aff'd*, 869 F.3d 848 (9th Cir. 2017). Plaintiff's position that the Court "is

18   constrained" by the Federal Rules of Evidence (Plaintiff's Objections at 2), and that

19   the Court must therefore exclude several declarations in whole or in part, is simply

20   wrong.

21   The challenged declarations do not violate any Federal Rules of Evidence, but

22   even if they did, the question of trial admissibility does not function to eliminate

23   evidence at the preliminary injunction stage. Formal rules of evidence, which

24   properly govern summary judgment determinations and trials, do not restrain courts

25   at the preliminary injunction stage for several reasons. First, because a preliminary

26   injunction "neither replaces the trial nor represents an adjudication of the merits," the

27   safeguards of the evidentiary rules simply "do not apply." Charles A. Wright and

28   Arthur R. Miller, Federal Practice & Procedure § 2949 (3d ed. 2020). Second,

1

because preliminary injunction motions require a prompt determination, courts recognize the impracticality of the parties procuring evidence in a trial-admissible form on a shortened timeline. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("Given the haste that is often necessary . . . a preliminary injunction is customarily [decided] on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."). Third, the discretionary nature of a preliminary injunction gives the Court a high degree of flexibility; "inasmuch as the grant of a preliminary injunction is discretionary, the trial court should be allowed to give even inadmissible evidence some weight when it is thought advisable to do so." Wright & Miller § 2949.

The Court can summarily deny Plaintiff's objections on this basis alone.[1] *See, e.g.*, *Nat'l Ass'n of Wheat Growers v. Zeise*, 309 F. Supp. 3d 842, 847 n.6 (E.D. Cal. 2018) (overruling, without individual analysis, all evidentiary objections to several declarations because evidence at the preliminary injunction stage "need not meet normal evidentiary standards, and the court may consider and give weight to inadmissible evidence in considering preliminary relief"). Indeed, it is reversible error for a court to refuse to consider a declaration submitted at the preliminary injunction stage based on non-compliance with rules that apply only at a final merits determination. *See Auntie Anne's, Inc. v. Wang*, No. CV 14-01049 MMM (EX), 2014 WL 11728722, at *9 n.83 (C.D. Cal. July 16, 2014) (citing *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004)).

---

[1] In the alternative, the Court can summarily deny Plaintiff's Objections to Intervenor-Defendants' Opposition Evidence for exceeding the page limit set out by Local Rule 11-6. *Fahmy v. Hogge*, No. CV 08-1152 PSG SHX, 2008 WL 4614322, at *2 (C.D. Cal. Oct. 14, 2008) ("It is within the Court's discretion to strike oversized briefs in their entirety."). "No memorandum of points and authorities, pre-trial brief, trial brief, or post-trial brief shall exceed 25 pages in length, excluding indices and exhibits, unless permitted by order of the judge." Local Rule 11-6. Plaintiff's Objections total 29 pages.

To the extent the Court considers the issues raised by Plaintiff, such as "hearsay, foundation, improper opinion, personal knowledge, speculation, and relevance," these issues "properly go to *weight* rather than admissibility." *Am. Hotel & Lodging Ass'n*, 119 F. Supp. 3d at 1185 (emphasis added); *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). Therefore, *if* the Court opts to consider trial admissibility at this time, it may consider only *how much weight* to give the challenged evidence. Such weighing of the evidence goes to "the merits of the preliminary injunction motion, however, and do[es] not [ ] warrant striking references to that evidence." *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, 257 F.R.D. 607, 616 (E.D. Cal. 2009). This weighing of evidence is not governed by any rules or standards; it is purely a matter of judicial discretion. *See Cazorla v. Hughes*, No. CV1402112MMMCWX, 2014 WL 12235425, at *4 (C.D. Cal. Apr. 7, 2014) (citing *Orantes-Hernandez v. Smith*, 541 F.Supp. 351, 356 n.4 (C.D. Cal. 1982)).

For the reasons below, Plaintiff's formalistic recitation of various Federal Rules of Evidence does not provide the Court with compelling reason to give less weight to any of Intervenor-Defendants' properly submitted evidence at the preliminary injunction stage.

# I.   EXPERT DECLARATIONS

## A.   Relevance and Reliability

Plaintiff objects broadly to the Declarations of Dr. Ranit Mishori, Professor Emily Benfer, and Dr. Sam Tsemberis on the grounds that Intervenor-Defendants fail to "establish the relevance and reliability" of the experts' testimony. Plaintiff's Objections at 2. Plaintiff proffers no reason to doubt the relevance or reliability of the declaration testimony of these highly qualified experts. The Court may give each declaration full weight.

Dr. Ranit Mishori is a professor, a practicing physician, and a public health expert, with experience addressing issues related to the health of the public in general and vulnerable populations in particular. Mishori Decl. ¶¶ 1-5. She advises, plans,

and executes COVID-19 responses, including for PBS NewsHour and the Georgetown University Department of Family Medicine. Mishori Decl. ¶¶ 3–4. Dr. Mishori's initial June 28, 2020 declaration and her supplemental October 4, 2020 declaration focus on the public health impact of housing instability and homelessness in the midst of the COVID-19 pandemic. *See generally* Mishori Decl. ¶¶ 7–40; Mishori Suppl. Decl. ¶¶ 3–7. Her expert opinion on coronavirus responses and public health issues impacting vulnerable populations is highly relevant as the Court (1) considers Plaintiff's likelihood of success on the merits on their constitutional claims, analyzing the emergent public health circumstances under which the ordinances were enacted; (2) weighs whether an injunction of the eviction protection and rent freeze ordinances is in the public interest; and (3) balances the equities by considering the effect on each party of granting or denying the injunction.[2]

Professor Emily Benfer has taught for over a decade on topics including public health and housing law, health equity and racial justice, disability law, housing and eviction law and policy, and access to health. Benfer Decl. ¶ 1. She is the principal investigator in a study of COVID-19 eviction moratoriums and tenancy preservation policies nationwide. Benfer Decl. ¶ 3. Professor Benfer is a reliable declarant as to the likely outcomes of an injunction on rates of eviction filings in Los Angeles and the resultant public and individual health consequences. *See generally* Benfer Decl. ¶¶ 6–37. As the Court weighs the public interest and balances the equities, it must naturally consider the likely consequences of an injunction. The declaratory testimony of Professor Benfer, who has closely tracked housing and eviction trends in Los Angeles and comparable jurisdictions, is highly relevant to the Court's consideration. *See* Benfer Decl. ¶¶ 15–19.

---

[2] "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Dr. Sam Tsemberis is a licensed clinical psychologist and the Founder and Executive Director of Pathways to Housing. Tsemberis Decl. ¶¶ 1–2. Across the United States and internationally, Dr. Tsemberis consults with and trains communities and agencies that are implementing Housing First programs. Tsemberis Decl. ¶ 2. Though his work rehousing the most vulnerable, Dr. Tsemberis has developed expertise on the disruptive impact of evictions, the physical and mental health impacts of homelessness, and the challenges of exiting homelessness. *See generally* Tsemberis Decl. ¶¶ 5–31. The numerous impacts of eviction on the health, safety, and long-term stability of individuals and families are important to the Court's consideration of the public interest and its balancing of the equities.

Plaintiff fails to undermine or even raise a single doubt as to the impressive credentials of the three expert declarants. Plaintiff does not explain why the topics addressed by the expert declarants—broadly, grave threat to public health posed by COVID-19 and the causal detrimental impacts of evictions on individual and public health—do not bear directly on the preliminary injunction analysis. Plaintiff's summary challenge to the relevance and reliability of these declarations is unsupported.

## B.   <u>Supplemental Declaration of Dr. Ranit Mishori</u>

Plaintiff challenges two specific paragraphs of the supplemental declaration of Dr. Ranit Mishori. Plaintiff's Objections at 3–4; Mishori Supp. Decl. ¶¶ 5, 7. In Paragraph 5, Dr. Mishori explains that there is no known cure to treat or vaccine to prevent COVID-19; she discusses a likely vaccine timeline and equitable allocation concerns. Mishori Supp. Decl. ¶ 5. In Paragraph 7, Dr. Mishori opines that \any scaling back of California's state and local protections against evictions and rent increases will lead to new cases of COVID-19, resulting in avoidable illnesses and deaths. Mishori Supp. Decl. ¶ 7. Plaintiff's bare-bones recitation of various rules of evidence provides no reason for the Court to weigh these paragraphs differently. Dr. Mishori's conclusions are not speculative; they are informed observations and

5

predictions based on her years of experience practicing medicine and researching infectious disease. *See* Mishori Decl. ¶¶ 1–5; Mishori Decl. Ex. A (CV). Her expert opinions do not lack foundation, they are within Dr. Mishori's personal knowledge, and they are proper opinion testimony. Plaintiff identifies no defect in Dr. Mishori's declaration, particularly at the preliminary injunction stage.

### C.  Declarations of Professor Emily Benfer and Dr. Sam Tsemberis

Plaintiff objects to the entirety of the declarations of Professor Emily Benfer and Dr. Sam Tsemberis on the basis that both declarants decline to discuss state- and federal-level eviction laws. Plaintiff's Objections at 4–6. Plaintiff does not explain why either declarant would be required to do so. As discussed above, Professor Benfer's and Dr. Tsemberis's declarations are relevant and persuasive as to a wide array of issues probative to the preliminary injunction analysis—from Los Angeles's high rates of housing insecurity, to the physical and mental health impacts of homelessness, to the public safety risks of evictions. *See generally* Benfer Decl. ¶¶ 6– 37; Tsemberis Decl. ¶¶ 5–31. Neither Professor Benfer nor Dr. Tsemberis is an expert as to the interaction between the challenged local Ordinances and state and federal eviction laws. Intervenor-Defendants explain the interactions between these laws in their opposition brief. *See* Intervenors' Opposition to Plaintiff's Motion for Preliminary Injunction 7–8. There is no reason Professor Benfer or Dr. Tsemberis would be required to weigh in on this purely legal statutory analysis. Plaintiff gives no reason why the Court should not heavily weigh these declarations as to the topics they discuss, which are relevant to the legal analysis and well within the declarants' field of expertise.

## II.  NON-EXPERT DECLARATIONS

Plaintiff lodges 23 pages worth of objections to several statements in declarations proffered by non-expert declarants. Intervenor-Defendants address the repeated hearsay, authentication, and best evidence rule challenges at the onset, and address other declaration-specific challenges in more detail below.

RESPONSE TO PLAINTIFF'S OBJECTIONS TO INTERVENOR-DEFENDANTS' OPPOSITION EVIDENCE

### A.      Hearsay, Authentication, and Best Evidence Rule

Plaintiff makes numerous objections on the basis of hearsay. Plaintiff's Objections at 7–10, 12, 14, 16–17, 19–21, 24, 26–29. "A district court may, however, consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc)). "The weight to be given each of these statements is in the discretion of the trial court." *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985). Beyond the bare and repeated invocation of the hearsay rule, Plaintiff fails to explain why the Court should give any alleged hearsay statements diminished weight.

Plaintiff also argues repeatedly that certain statements in the declarations require the attachment or authentication of writings, or that the best evidence rule applies to exclude certain statements. Plaintiff's Objections at 7–10, 12, 14–18, 21, 23, 25–28. These formalistic rules are impractical and inapplicable at the preliminary injunction stage. *See Andreas Carlsson Prod. AB v. Barnes*, No. CV156049DMGAJWX, 2016 WL 11499656, at *6 (C.D. Cal. Oct. 11, 2016) (summarily overruling evidentiary objections based on alleged violations of the best evidence rule due to the urgency of the preliminary injunction determination and the evidentiary flexibility applied to preliminary injunction proceedings).

### B.      Supplemental Declaration of Cynthia Strathmann

Plaintiff lodges additional objections to several portions of the supplemental declaration of Cynthia Strathmann, the Executive Director of SAJE. Plaintiff's Objections at 7–10. First, Plaintiff objects to Ms. Strathmann's statements (1) that many SAJE community members make about $20,000 per year and the vast majority are rent burdened, meaning they pay more than 30% of their income to rent, and (2) that around 650 letters have been sent by Los Angeles tenants using SAJE's letter-generating website. Strathmann Decl. ¶¶ 4, 8. Next, Plaintiff objects to Ms. Strathmann's statement that the facts described in her first declaration continue to be

7

true, and that the hardships faced by tenants that she described in her first declaration "are being felt even more acutely as the pandemic has gone on." Plaintiff's Objections at 9; Strathmann Decl. ¶ 9. Lastly, Plaintiff objects to a series of statements in which Ms. Strathmann details harms experienced by vulnerable tenants she serves as they struggle to remain housed, from missed meals to sacrificed medication. Plaintiff's Objections at 9–10; Strathmann Decl. ¶¶ 11–14, 16–17.

Ms. Strathmann's statements are based on her personal knowledge as the Executive Director of SAJE, her personal experiences working with Los Angeles's most vulnerable tenants, and her ongoing relationships with the tenants for whom she works. Ms. Strathmann does not need "specialized knowledge as to income valuation" (Plaintiff's Objections at 8) to offer informed estimates for the Court's weighing and consideration; Plaintiff proffers no reason to doubt the accuracy of these estimates and no contrary evidence to dispute them. Ms. Strathmann's statement as to the escalating hardships tenants face as the pandemic progresses is supported by numerous tenant declarations. *See, e.g.*, Danny C. Decl. ¶ 8 (debt from missed rent has been accumulating since April); Pedro M. Decl. ¶ 11 (same); Susana S. Decl. ¶ 9 (same). Ms. Strathmann's declaration details the significant protectable interest in remaining housed that formed the basis for Intervenor-Defendants' right to intervene in this matter in the first instance. Her insights as to the economic hardships faced by SAJE members, the lengths to which SAJE members will go to pay their rent, and the reliance of SAJE members on the challenged ordinances to remain housed is relevant to the Court's balancing of the equities.

### C. <u>Declaration of Francisco Dueñas</u>

Plaintiff also objects to several portions of the declaration of Francisco Dueñas. Plaintiff's Objections at 16–18. Mr. Dueñas is a landlord and owner of a three-unit rental property located in Boyle Heights. Dueñas Decl. ¶ 2. Plaintiff's challenges to relevance are misguided, as Mr. Dueñas's declaration testimony is highly relevant as to (1) likelihood of success on the merits, (2) irreparable harm, and

1   (3) balancing the equities.

2       First, in order to succeed on its facial constitutional challenges, Plaintiff must

3   show that *all* rental agreements in Los Angeles are substantially impaired by the

4   challenged ordinances and that *all* landlords' substantive due process rights are

5   violated. *See* Intervenors' Opposition to Plaintiff's Motion for Preliminary Injunction

6   at 3, 12–15. Mr. Dueñas's declaration testimony alone defeats these claims: he is

7   compliant with the ordinances, his tenants continue to pay rent, and the value of his

8   property and his lease agreements have not significantly changed.  Dueñas Decl.

9   ¶¶ 5–7, 10. Because Mr. Dueñas is an example of a landlord whose Contracts Clause

10  and Due Process rights are plainly *not* violated, Mr. Dueñas's declaration is relevant

11  to the Court's analysis of whether Plaintiff is likely to succeed on the merits of these

12  claims.

13      Second, Mr. Dueñas's statements are relevant to the irreparable harm analysis.

14  He reports reaping continued benefits from his ownership of the property and he

15  discerns very little impact of the ordinances, irreparable or otherwise. Dueñas Decl.

16  ¶¶ 14–15. Indeed, the only increased cost Mr. Dueñas identifies is "a minimal

17  increase in our water bill." Dueñas Decl. ¶ 5. To the extent this constitutes a harm, it

18  is far from irreparable.

19      Third, Mr. Dueñas's statements inform the Court's balancing of the equities.

20  Mr. Dueñas explains that, in spite of the pandemic and the challenged ordinances, he

21  maintains long-term economic stability, equity in his building, improved credit, and

22  the opportunity to build generational wealth. Dueñas Decl. ¶ 15. Mr. Dueñas's

23  description of his economic situation provides a stark contrast to numerous tenants,

24  who report devastating economic effects of the pandemic on their households and the

25  absolute necessity of the ordinances to remain housed. *See, e.g.*, David D. Decl. ¶ 16

26  ("I had to cut my food budget and limit myself to only one meal a day."); Paola R.

27  Decl. ¶ 9 (explaining that she has accumulated about $2,500 worth of credit card debt

28  paying for food, utilities, and other basic expenses); Sonia R. ¶¶ 8–9 (explaining that,

9

RESPONSE TO PLAINTIFF'S OBJECTIONS TO INTERVENOR-DEFENDANTS' OPPOSITION EVIDENCE

1    since her hours at her fast food job have been cut from 48 hours to 16 hours, groceries

2    for her family cost her entire income).

3        Plaintiff additionally argues that Mr. Dueñas gives improper lay opinions in

4    his declaration. Mr. Dueñas does not purport to be an expert on property valuation,

5    but no such expertise is required here. As the owner of the property, Mr. Dueñas

6    testifies with personal knowledge about his mortgage loan amount and payments, the

7    rent he collects each month, his history of refinancing and reappraising his property,

8    and the recently-assessed value of his property. Dueñas Decl. ¶¶ 2–3, 5–7. These

9    financial facts clearly support Mr. Dueñas's conclusion that the value of his property

10   has been unaffected by the challenged ordinances. No technical or specialized

11   knowledge is displayed or required.

12       **D.**   **Declarations of Tenants Gabriel B., Danny C., Drew Cookson,**

13             **Pedro M., Paola R., Sonia R., Susana S., and Eugenia T.**

14       Plaintiff lastly challenges portions of each tenant declaration, which capture

15   the stories of several Los Angeles tenants who have lost work due to the pandemic

16   and who are struggling to remain housed. Plaintiff's Objections at 10–16, 18–30. All

17   challenged portions should be considered and afforded full weight.

18       Plaintiff challenges the relevance of several statements made by tenant

19   declarants regarding their poverty and financial burdens in addition to rent. *E.g.*,

20   Gabriel B. Decl. ¶ 13; Danny C. Decl. ¶ 15. These statements elucidate tenant

21   declarants' precarious financial situations and vulnerability to eviction. They are

22   relevant to the balancing of the equities and whether an injunction is in the public

23   interest, as the Court considers the impact of the ordinances and a potential injunction

24   on the declarants and on similarly-situated low-income tenants across Los Angeles.

25       Plaintiff further argues that tenants' explanations of their financial inability to

26   pay rent constitute speculation or improper lay opinions. Several tenants offer

27   estimates about how long it will take them to pay back the rent debt they have

28   accumulated. Gabriel B. Decl. ¶ 15; Pedro M. Decl. ¶ 13; Paola R. Decl. ¶ 11. Many

of the tenants predict that if the preliminary injunction were granted, they would be at risk of eviction due to their inability to pay. Danny C. Decl. ¶ 9; Pedro M. Decl. ¶ 12; Paola R. Decl. ¶ 11; Sonia R. Decl. ¶ 12; Susana S. Decl. ¶ 12; Eugenia T. Decl. ¶ 17. Tenant declarants' statements are based on their personal experiences and knowledge of their past income, their earning potential, their lost wages, their expenses, and their overall finances in the context of the pandemic.

Plaintiff also lodges objections to several tenant declarants' descriptions of landlord harassment, retaliation, and attempted coerced move-outs. Danny C. Decl. ¶¶ 8, 10, 13; Cookson Decl. ¶ 14; Pedro M. Decl. ¶ 14; Paola R. Decl. ¶ 13; Sonia R. Decl. ¶ 15; Eugenia T. Decl. ¶ 9–13, 15, 18–21. Plaintiff asserts that past harassment has no relevance and that predictions of future retaliation are speculative. On the contrary, harassment and retaliation by landlords is highly relevant as the Court evaluates the likelihood of these tenants and similarly-situated tenants facing eviction absent the protection of the challenged ordinances. These details undermine AAGLA's claim that landlords lack incentives to evict tenants and provide a factual foundation for several tenant declarants' expression of fear and anxiety that their landlords will evict them at first opportunity. *E.g.*, Danny C. Decl. ¶ 15; Pedro M. Decl. ¶ 12.

## III.   <u>CONCLUSION</u>

Because evidentiary rules do not apply to disqualify evidence at the preliminary injunction stage, Intervenor-Defendants respectfully request that this Court deny Plaintiff's Objections to Intervenor-Defendants' Opposition Evidence.

RESPONSE TO PLAINTIFF'S OBJECTIONS TO INTERVENOR-DEFENDANTS' OPPOSITION EVIDENCE

Dated: October 19, 2020

PUBLIC COUNSEL

By: */s/ Kathryn Eidmann*
    Kathryn Eidmann
    Faizah Malik
    Gigi Lam
    Alisa Randell
    Lauren Zack
    610 S. Ardmore Avenue
    Los Angeles, California 90005
    Telephone: (213) 385-2977
    Facsimile:  (213) 385-9089
    Email: keidmann@publiccounsel.org
        fmalik@publiccounsel.org
        glam@publiccounsel.org
        arandell@publiccounsel.org
        lzack@publiccounsel.org

WESTERN CENTER ON LAW AND POVERTY

By: */s/ Nisha Vyas*
    Nisha Vyas
    Matthew Warren
    Richard Rothschild
    3701 Wilshire Blvd. #208
    Los Angeles, CA 90010
    Telephone: (213) 487-7211
    Facsimile:  (213) 487-0242
    Email: nvyas@wclp.org
        mwarren@wclp.org
        rrothschild@wclp.org

PUBLIC INTEREST LAW PROJECT

By: */s/ Michael Rawson*
    Michael Rawson
    Craig Castellanet
    449 15th Street #301
    Oakland, California 94612
    Telephone: (510) 891-9794
    Facsimile:  (510) 891-9727
    Email: mrawson@pilpca.org
        ccastellanet@pilpca.org

SUSMAN GODFREY L.L.P.

By: */s/ Rohit D. Nath*
    Marc M. Seltzer
    Krysta Kauble Pachman
    Rohit D. Nath
    1900 Avenue of the Stars, Suite 1400

12

Los Angeles, CA 90067
Telephone:      (310) 789-3100
Facsimile:      (310) 789-3150
Email: mseltzer@susmangodfrey.com
            kpachman@susmangodfrey.com
            rnath@susmangodfrey.com

Attorneys for Intervenor-Defendants,
ALLIANCE OF CALIFORNIANS FOR
COMMUNITY EMPOWERMENT ACTION
and STRATEGIC ACTIONS FOR A JUST
ECONOMY

13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

*/s/ Kathryn Eidmann*
Kathryn Eidmann

14